UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| DAVID A. ATKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:10CV40-A-D |
| KEN SALAZAR, SECRETARY DEPARTMENT OF THE INTERIOR, Defendant. | ) ) ) ) ) |

## DECLARATION OF JEAN FISHER

I, Jean Fisher, pursuant to 28 U.S.C. ' 1746, declare under penalty of perjury that the following information provided in this document is true and correct to the best of my knowledge and belief and that it is provided freely and voluntarily.

1. I am employed by the National Park Service, a bureau of the U. S. Department of the Interior. My duty station is in Washington, D.C. I have been employed by the Park Service since November 2006, first as a Medical Standards Program Analyst and, since October 2009, as Manager of the Park Service's Medical Standards Program (MSP). Prior to joining the Park Service, I was a Program Manager at Comprehensive Health Services, Inc., an occupational health management company currently located in Reston, Virginia which, during my employment there and presently, processed all medical examinations for Park Service law enforcement personnel.

2. As the Medical Standards Program Manager, I provide guidance and support to Park Service regional offices, servicing personnel offices, parks and employees in designated arduous duties law enforcement positions undergoing the medical review process established by

Park Service Director's Orders/Reference Manual 57A, the Park Service's Occupational Medical Standards Guidelines.

3. In the late 1990's, the Park Service as well as other Department of Interior bureaus with full time law enforcement personnel established MSPs. Under the Park Service's MSP, which is approved by the U. S. Office of Personnel Management, the medical and physical health of Park Service law enforcement personnel is monitored through periodic examinations to ensure they are fit to perform the arduous law enforcement duties of their positions without endangering their own life, safety and health and the life, safety and health of others. Also established as part of the Park Service's MSP was a Medical Review Board (MRB), a panel consisting of experts in the medical, law enforcement and risk management fields whose primary purpose is to make determinations concerning the medical and physical capabilities of Park Service law enforcement personnel. As Manager of the MSP, I serve as liaison between the MRB and Park Service law enforcement personnel; as Manager I also have access to MRB records concerning the medical review process involving law enforcement personnel.

4. Shortly after the MSP was established, the Park Service began conducting periodic physical and medical examinations of it's law enforcement Park Rangers. As noted, these examinations are conducted to determine the physical and medical fitness of Park Rangers to perform arduous law enforcement duties, and to identify any conditions they might have that would prevent them from performing these duties in a safe manner. Park Rangers who do not meet the medical standards because of a medical or physical condition are determined to be not medically qualified to perform their law enforcement duties and thus may be subject to various administrative actions, including restriction from performing law enforcement duties or

suspension or revocation of their law enforcement commission.

    5.    Any number of medical conditions can result in a Park Ranger being not medically qualified to perform law enforcement duties, including, under certain circumstances, diabetes. However, diabetes in and of itself is not nor has it ever been considered a disqualifying condition. Indeed, several Park Rangers who are Type 1 Insulin Dependent diabetics are medically qualified to continue to perform arduous law enforcement duties; this has been the case since the MSP began. Despite having the condition, these individuals are medically qualified to perform their law enforcement duties because they have demonstrated the ability to stabilize their blood sugar at acceptable levels. In such instances the MRB has determined that these individuals do not present the same safety and health risks as Park Rangers whose diabetes is not controlled or unstable. On the other hand, however, Park Rangers whose particular medical conditions are not under control and therefore do not meet the Park Service's medical standards for law enforcement, have been determined to be not medically qualified to perform law enforcement duties. Some examples over the years include the following:

    a)    in 2003, a Park Ranger at Amistad National Park in Texas was medically disqualified for law enforcement duties because of uncontrolled diabetes;

    b)    in 2006, a Park Ranger at Jefferson National Expansion Memorial in Missouri was denied a medical waiver by the MRB and was medically disqualified for law enforcement duties because of neurological and motor deficits;

    c)    in 2007, a Park Ranger at Petrified Forest National Park in Arizona was denied a medical waiver by the MRB and was medically disqualified for law enforcement duties because he did not meet the musculoskeletal system standard (injury to knees prevented him from performing essential duties of the job, including

rigorous training, crawling and prolonged running);

d) in 2008, the MRB found that an applicant for a Park Ranger law enforcement position at Acadia National Park in Maine was not medically qualified for the position because of recurrent deep venous thrombophlebitis and pulmonary embolism; and

e) in 2010, a Park Ranger at Obed Wild and Scenic River in Tennessee was denied a medical waiver by the MRB and was medically disqualified because of inconsistent medication or failure to follow up with treatment for bi-polar I disorder; an

f) in 2010, the MRB found that an applicant for a Park Ranger law enforcement position at North Cascaded National Park in Washington state was not medically qualified for the position because he had "red/green" color deficiency and as a result failed the required color vision test.

_Jean Fisher_
JEAN FISHER

4/15/2010
Date